FILED
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
AUG 08 2019
JAMES W. McCORMACK, CLERK
By: ____ DEP CLERK

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

CANDICE CALDWELL and
FAYE HERNANDEZ,

Plaintiffs,

v.

CITY OF LITTLE ROCK, a municipality,
KENTON BUCKNER, individually and
in his official capacity,
MARK ISON, individually,
DALTON SCHISLER, individually,
ROBERT BELL, individually,
ZACHARY HARDMAN, individually,
and JOHN DOES 1-25, individually,

Defendants.

Case No.: 4:19-cv-550-JM

****JURY TRIAL DEMANDED*

**This case assigned to District Judge** Moody
**and to Magistrate Judge** Deere

**COMPLAINT**

NOW COME, Plaintiffs, CANDICE CALDWELL and FAYE HERNANDEZ, (hereafter "PLAINTIFFS"), by and through their attorneys, LAUX LAW GROUP and BEN CRUMP, PLLC, and for their cause of action, states as follows:

INTRODUCTION

The Fourth Amendment to the United States Constitution reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

JURISDICTION AND VENUE

1. This action arises under the United States Constitution, particularly under the Fourth and Fourteenth Amendments, and under law, particularly the Civil Rights Act of 1871, 42

U.S.C. § 1983 and Arkansas state law. This Honorable Court has jurisdiction by virtue of 28 U.S.C. §§ 1331 and 1367. Venue is founded in this Court upon 28 U.S.C. § 1391 as the acts of which Plaintiffs complain arose in this District.

PARTIES

2. At all relevant times, PLAINTIFFS, CANDICE CALDWELL ("CANDICE") and FAYE HERNANDEZ ("FAYE"), and each of them, were citizens of the United States of America and were, therefore, entitled to all legal and constitutional rights afforded citizens of the United States of America. At all relevant times, PLAINTIFFS, and each of them, resided in Pulaski County, Arkansas. At all relevant times, including February 16, 2018, PLAINTIFFS lived at 9806 Labette Dr., Little Rock, Arkansas.

3. At all relevant times, the CITY OF LITTLE ROCK (hereafter "CITY") was a municipality organized and existing under the laws of the State of Arkansas. At all relevant times, the CITY was located in the County of Pulaski, State of Arkansas, and was the employer of the individually-named defendants. At all relevant times, the CITY is and was empowered, funded and directed to pay any § 1983 civil rights or intentional tort judgment for compensatory damages, actual damages and attorney fees, if applicable, for which any CITY employee acting within the scope of his or her employment is found liable.

4. Accordingly, the CITY is an indemnification party regarding the acts and/or omissions of which PLAINTIFFS complain. As reflected in the matter of *Ellison v. Lesher, et al.*, 4:11-CV-752 BSM, the CITY has the authority to provide for the indemnification of CITY police officers accused of civil rights violations and intentional torts committed within the scope of their employment, and its common practice was to authorize indemnification for such officers.

5. At all relevant times, the CITY participated in the Municipal Legal Defense Program which is offered by the Arkansas Municipal League to Arkansas towns and cities. The acts and omissions of which PLAINTIFFS complain constitute a civil rights lawsuit against the CITY and the individually-named defendants. The Arkansas Municipal Legal is a primary or secondary indemnification party regarding the acts and omissions of CITY and the individually-named defendants of which PLAINTIFFS herein complain.

6. At all relevant times, the CITY delegates its policy-making authority to its chiefs of police, including Defendant, KENTON BUCKNER (hereafter "DEFENDANT BUCKNER"), and his predecessors, including Stuart Thomas.

7. At all relevant times, DEFENDANT BUCKNER, was employed by the CITY, and acted under the color of state law, within the scope of his employment. At all relevant times, DEFENDANT BUCKNER had the ultimate responsibility within the Little Rock Police Department (LRPD) for the protection of life, the upholding of the United States Constitution, the preservation of law and order, the investigation of all crimes and the enforcement of the laws of the State of Arkansas.

8. At all relevant times, the CITY delegated to DEFENDANT BUCKNER final policy-making authority to create, adopt and implement police policies within the LRPD whether formal or informal. At all relevant times, DEFENDANT BUCKNER was responsible for assuring the enforcement of LRPD General Orders, Rules & Regulations and Divisional Operational Procedures (collectively "policy" or "policies") among LRPD officers. As Chief of Police of LRPD, and pursuant to the authority vested in him, DEFENDANT BUCKNER was empowered to initiate procedural changes to address or remedy any unconstitutional trend or pattern that he identified during his tenure as chief.

9. At all relevant times, DEFENDANT BUCKNER had the final authority in terms of promulgating policies for enactment at the LRPD–whether those policies were formal or informal–via memoranda to his LRPD subordinates, down the chain of command.

10. At all relevant times, Defendants, MARK ISON, DALTON SCHISLER, ROBERT BELL and ZACHARY HARDMAN (collectively "NARCOTICS DEFENDANTS"), and each of them, were employed by the CITY as LRPD police officers, working in the LRPD Narcotics Unit and acting under the color of state law, within the scope of their employment.

11. At all relevant times, including February 16, 2018, Defendants, JOHN DOES 1-25, were employed by the CITY as LRPD police officers and some of them were members of the LRPD Special Weapons and Tactics (SWAT) Unit.

12. At all relevant times, JOHN DOES 1-25, were either employed by the CITY as police officers and were acting under the color of state law, within the scope of their employment or were confidential informants who worked with CITY-employed police officers in sting operations and controlled drug purchases.

13. Though JOHN DOES 1-25 are currently unidentified, PLAINTIFFS allege that each of them engaged in various unconstitutional acts and omissions which proximately caused their damages. Upon information and belief, PLAINTIFFS state that the true identities of JOHN DOES 1-25 will be ascertained during court-ordered discovery in the matter.

BACKGROUND FACTS

14. At all relevant times, the LRPD had a Narcotics Unit which was responsible for the investigation of criminal offenses related to the trafficking of controlled substances. At all relevant times, NARCOTICS DEFENDANTS were members of the Narcotics Unit. The Narcotics Unit is responsible for the investigation of criminal offenses related to the trafficking

of controlled substances. According to the CITY, during 2016, the Narcotics Unit arrested 982 individuals and charged them with 1,965 felonies and 1,317 misdemeanor crimes. The Narcotics Unit sometimes enlists the assistance of confidential informants ("C.I.s") to provide information on potential drug traffickers and to participate in drug stings in the role of drug purchaser for which the C.I.s are monetarily or otherwise compensated.

15. The SWAT Unit is staffed by a Lieutenant (Unit Commander), two (2) sergeants (Team Leaders) and twenty-five (25) officers. At all relevant times, the LRPD had a SWAT policy which reflects that the SWAT Unit's "primary mission" is "to provide support to the Department during operations that require special training and equipment to resolve high-risk situations." The LRPD's SWAT policy states that "[e]ach tactical situation is unique and may require different responses." According to the CITY, in 2016, the SWAT Unit responded to seven (7) SWAT call-outs and executed eighty-nine (89) high-risk search warrants.

16. The SWAT Unit is typically outfitted with an array of weaponry, including a carbine assault rifle, which is comparable to an AR-15. The assault rifle of choice most often at the LRPD is the .223 caliber Bushmaster with EOTech holographic laser scope or Bushmaster M4-Type Carbine. A .223 caliber Bushmaster carbine assault rifle and ammunition are depicted in Photographs 1-2 (below) respectively:


Photograph 1


Photograph 2

17. Both the LRPD SWAT Unit and Narcotics Unit are under the direct command of the Special Investigations Division Commander who reports directly to the LRPD chief of police. From June 2014 until late 2018 the chief of police was DEFENDANT BUCKNER.

18. A "no-knock" warrant is defined as a search warrant that authorizes police officers to enter certain premises without first knocking and announcing their presence or purpose prior to entering the premises. In order to obtain a "no-knock" warrant, a police officer must submit an affidavit to a judge or magistrate whom, upon receiving and reviewing said affidavit, will decide whether to authorize an exception to the "knock and announce" rule based on the facts presented in the affidavit.

19. At all relevant times, DEFENDANT BUCKNER and the NARCOTICS DEFENDANTS, and each of them, were trained in the Fourth Amendment and proper search and seizure law, and were further that aware that affidavits submitted to judges or magistrates by officers seeking to obtain "no-knock" warrants must be premised on a good faith determination that probable cause exists.

20. At all relevant times, DEFENDANT BUCKNER and the NARCOTICS DEFENDANTS, and each of them, knew that the Fourth Amendment's requirement that a specific place be described when applied to dwellings refers to a single famil unit (the residence of one person or family). At all relevant times, DEFENDANT BUCKNER and the NARCOTICS DEFENDANTS, and each of them, knew that a warrant which describes an entire building when cause is shown for searching only one apartment unit is void.

21. At all relevant times, DEFENDANT BUCKNER and the NARCOTICS DEFENDANTS, and each of them, knew that an issued warrant which allows a police officer to

enter a dwelling located at one address does not permit the police officer to enter another dwelling situated at another address on the basis of the warrant for the initial dwelling.

22. At all relevant times, DEFENDANT BUCKNER and the NARCOTICS DEFENDANTS, and each of them, knew that "no-knock" warrants were reserved for "high-risk situations," and that it is unconstitutional and unlawful to knowingly submit affidavits which contain material misrepresentations of fact or are otherwise untruthful to judges or magistrates. At all relevant times, DEFENDANT BUCKNER and the NARCOTICS DEFENDANTS, and each of them, were aware of the inherently dangerous nature of SWAT entries.

23. Prior to April 2014, the CITY and DEFENDANT BUCKNER knew that the NARCOTICS DEFENDANTS and other CITY employees made material misrepresentations and omissions to judges in order to gain "no-knock" entry into homes despite the fact that the owners and residents of those homes did not meet the required criteria and did not constitute a "high risk situations."

24. Moreover, the CITY and DEFENDANT BUCKNER knew that the NARCOTICS DEFENDANTS and other CITY employees often presented affidavits for "no-knock" warrants to judges in which material misrepresentations and untruths were contained.

25. Furthermore, at all relevant times, the CITY and DEFENDANT BUCKNER knew that the NARCOTICS DEFENDANTS, and each of them, had a practice of utilizing C.I.s that were known to be unreliable, to provide false information and to have prior convictions for crimes involving false statements and deception. They knew that the NARCOTICS DEFENDANTS' failure to adhere to constitutional requirements of the Fourth Amendment would result in C.I.s becoming motivated to lie for monetary reasons or otherwise exploit the system for personal benefit.

26. Despite this knowledge, in or around April 2014, and for many years prior thereto, there existed an unconstitutional official policy at the LRPD (hereafter "mandatory SWAT policy") whereby SWAT Unit involvement was required for every search warrant executed by the LRPD, regardless of the fact that the constitutional threshold for this type of entry was often not satisfied in the circumstances presented to the NARCOTICS DEFENDANTS.

27. An excerpt from an April 7, 2014 LRPD Memorandum from an LRPD sergeant reads as follows:

> "The reason SWAT was used is because many times guns and violence are associated with narcotics. *It is a mandate from the Office of the Chief of Police that the SWAT team execute all search warrants.*" (emphasis added).

28. A "policy," as defined by the Eighth Circuit Court of Appeals in *Mettler v. Whitledge*, 165 F.3d 1197 (1999), is "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."

29. Pleading alternately, a *Monell* "custom" is defined as a practice of municipal officials that is not authorized by written law, but which is so permanent and well-settled as to have the force of law.

30. Pleading alternately, at all relevant times, including prior to April 2014, there existed an unconstitutional *Monell* municipal "custom" at the LRPD whereby LRPD chiefs of police, including DEFENDANT BUCKNER, knowingly authorized the use of the SWAT Unit for every search warrant executed by the LRPD or in situations not reasonably characterized as "high risk" despite the fact that such a custom constitutes a continuing violation the Fourth Amendment.

31. At all relevant times, DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and JOHN DOES 1-25, and each of them, knew or should have known that the mandatory SWAT policy did not comport with the liberty protections established and enshrined in the United States Constitution, particularly, the Fourth and Fourteenth Amendments.

32. At all relevant times, including during various IAD investigations resulting from "no-knock" narcotics raids, DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and JOHN DOES 1-25, and each of them, knew that many "no-knock" narcotics raids executed by the NARCOTICS DEFENDANTS and JOHN DOES 1-25 were in violation of LRPD policy and the United States Constitution.

33. Despite this knowledge and despite the inherently dangerous nature of the "no-knock" narcotics raids conducted by the NARCOTICS DEFENDANTS and JOHN DOES 1-25, DEFENDANT BUCKNER continued to promulgate an unconstitutional official policy and/or tolerate and maintain a *Monell* "custom" which was unconstitutional and posed an unreasonable threat of harm to the persons and property of Little Rock citizens.

## THE UNCONSTITUTIONAL AND ILLEGAL FEBRUARY 16, 2018 "NO-KNOCK" RAID ON PLAINTIFFS' HOME EXECUTED BY THE NARCOTICS DEFENDANTS AND JOHN DOES 1-25

34. At all relevant times, including February 16, 2018, CANDICE and FAYE lived at FAYE's home, located at 9806 Labette Dr., Little Rock, Arkansas. FAYE was 82 years of age on February 16, 2018 and, at all relevant times, CANDICE was FAYE's caretaker. Shawn Weatherford, FAYE's grandson and CANDICE's boyfriend, also resided at 9806 Labette Dr. By September 2018, FAYE had lived at 9806 Labette Dr. for over 45 years.

35. Days prior to February 16, 2018, CANDICE's mother passed away.

36. On February 2, 2018, DEFENDANT ISON submitted an affidavit to Judge Hugh Finkelstein wherein he requested Judge Finkelstein authorize the execution of a "no-knock" search warrant on 9806 Labette Dr.

37. In his affidavit, DEFENDANT ISON stated that he was contacted by a "reliable cooperating individual" who stated that "he/she could purchase Methamphetamine from Shawn Weatherford" at 9806 Labette Dr. DEFENDANT ISON provided no date for this contact.

38. In his affidavit, DEFENDANT ISON stated that on February 2, 2018, he and DEFENDANT SCHISLER met with the C.I. set up a controlled drug purchase at 9806 Labette Dr.

39. In his affidavit, DEFENDANT ISON told Judge Finkelstein that the C.I. went inside the residence at 9806 Labette on that date, made contact with Shawn Weatherford and bought $60 of Methamphetamine from him.

40. DEFENDANT ISON allowed the C.I. to leave his field of vision around the time of the alleged contact with Shawn Weatherford.

41. In his affidavit, DEFENDANT ISON stated that the C.I. told him that the C.I. bought $60 of Methamphetamine from Shawn Weatherford on February 16, 2018.

42. Neither DEFENDANT ISON nor DEFENDANT SCHISLER video- or audio-recorded any aspect of their purported dealings with the C.I. mentioned in DEFENDANT ISON's affidavit.

43. DEFENDANT ISON's affidavit contains material misrepresentations of fact and material omissions.

44. DEFENDANT ISON has been untruthful in affidavits before, specifically, in an August 4, 2017 affidavit he drafted regarding an alleged controlled drug purchase from Roderick

Talley. In that August 4, 2017 affidavit, DEFENDANT ISON claimed that he observed contact between a C.I. and Mr. Talley, which is false and demonstrated to be false by a video recording from Mr. Talley's front porch.

45. On August 31, 2016, Judge Finkelstein issued the warrant based on DEFENDANT KALMER's affidavit and permitted NARCOTICS DEFENDANTS and JOHN DOES 1-25 to enter the premises of 9806 Labette Dr. without knocking and announcing.

46. Prior to February 16, 2018, NARCOTICS DEFENDANTS and JOHN DOES 1-25 met and discussed preparation for the simultaneous "no-knock" warrant executions they intended to conduct on the dwellings located at 3114 King Road and 3220 King Road.

47. Prior to February 16, 2018, official SWAT forms were filled out which reflect that there was a briefing in regard to the planned "no-knock" warrant execution on 9806 Labette Dr.

48. Regarding the inhabitant(s) of 9806 Labette Dr. or "suspect," the official SWAT forms reflect that on February 16, 2018 the NARCOTICS DEFENDANTS and JOHN DOES 1-25 did not know if the suspect had a known violent history. On February 16, 2018, they did not know if the suspect is on parole or mentally unstable.

49. On February 16, 2018, the NARCOTICS DEFENDANTS and JOHN DOES 1-25 did not know if the suspect was known or believed to be known to possess a weapon. On February 16, 2018, the NARCOTICS DEFENDANTS and JOHN DOES 1-25 did not know if there were any children, elderly persons or handicapped persons present at the site.

The February 16, 2018 "No-Knock" Raid of 9806 Labette Dr.

50. On February 16, 2018, at approximately 9:50 a.m., CANDICE was at home alone in her bedroom with her dog. Around that time, CANDICE heard several very loud explosions coming from another part of the house and she soon heard people running through her home.

51. CANDICE grabbed her dog and, shortly thereafter, NARCOTICS DEFENDANTS and JOHN DOES 1-25, burst through her bedroom door, with their assault rifles drawn and raised. They screamed instructions at CANDICE which terrified her. She begged the NARCOTICS DEFENDANTS and JOHN DOES 1-25 not to shoot her dog. Shocked by the intrusion into her home, she cried and screamed while the NARCOTICS DEFENDANTS and JOHN DOES 1-25 stormed through her home, as reflected in Photograph 3 (below):




Photograph 3

52. NARCOTICS DEFENDANTS and JOHN DOES 1-25 trashed FAYE AND CANDICE's home, causing major damage. Using a battering ram, they shattered FAYE's glass storm door and destroyed the interior front door during their "dynamic" entry, as reflected in Photographs 4-5 (below):



Photograph 4


Photograph 5

53. Once FAYE and CANDICE's front door was forced open, NARCOTICS DEFENDANTS and JOHN DOES 1-25 threw a flash bang grenade inside which exploded, terrifying CANDICE and scorching the carpet, along with causing other significant property damage, as reflected in Photographs 6-7 (below):



**Photograph 6**



**Photograph 7**

54. NARCOTICS DEFENDANTS and JOHN DOES 1-25 destroyed FAYE's thermostat because they thought it was a video camera that might capture their unconstitutional raid.

55. NARCOTICS DEFENDANTS and JOHN DOES 1-25 actually retrieved a ladder from FAYE's garage, as reflected in Photograph 8 (below) and climbed on top of her roof, gaining entry through a second story bedroom window:



Photograph 8

56. NARCOTICS DEFENDANTS and JOHN DOES 1-25 shot holes in FAYE's ceiling for no apparent reason, causing major damage, as reflected in Photographs 9-10 (below):


Photograph 9


Photograph 10

57. The damage to FAYE's ceiling and roof, which was caused by the "no-knock" raid executed by NARCOTICS DEFENDANTS and JOHN DOES 1-25, cost FAYE approximately $7800 to repair.

58. None of NARCOTICS DEFENDANTS or JOHN DOES 1-25 announced their presence or identified themselves as police officers.

59. When NARCOTICS DEFENDANTS and JOHN DOES 1-25 learned from CANDICE that FAYE had a DVR system which included video cameras on the premises of 9806 Labette Dr., they removed the system from the home and absconded with it.

60. Though DEFENDANT ISON attested to Judge Finkelstein that massive quantities of Methamphetamine would be found at 9806 Labette Dr., no massive quantities of that drug were found there. Absolutely no drugs or contraband were found at 9806 Labette Dr. during the February 16, 2018 "no-knock" raid, as reflected the LRPD search warrant inventory depicted in Photograph 11 (below):

2018-019419

LITTLE ROCK POLICE DEPARTMENT
SEARCH WARRANT INVENTORY

LITTLE ROCK DISTRICT COURT
FILED
2018 FEB 16 PM 3:12

LOCATION 9806 Labette LR AR

DATE SERVED 2/16/18 TIME SERVED 953 TIME CONCLUDED 1110

SERVING AGENCIES LRPD

ITEMS SEIZED

| ITEM # | DESCRIPTION | OFFICER | LOCATION FOUND |
|---|---|---|---|
| E1 | Glass smoking pipe | Hardiman | Shawn Weatherfords bedroom dresser |
| E2 | Surveillance cameras/ | Bell | all parts of residence |
| | with DVR | | Shawns bedroom |
| | | | |
| | | | |

Photograph 11

61. Nonetheless, CANDICE was arrested by DEFENDANT ISON for possession of a controlled substance.

62. In March 2018, Pulaski County Criminal Case No. LRCR-18-734, *State of Arkansas v. Candice Caldwell*, related to CANDICE's September 1, 2016 arrest by DEFENDANT ISON during the "no-knock" raid, was dismissed in its entirety.

63. In August 2018, the judge officially released FAYE's DVR system and instructed FAYE that she may retrieve her property at that time.

64. However, when FAYE, CANDICE and FAYE's daughter went to the LRPD to retrieve FAYE'S DVR system, they were told that DEFENDANT ISON was in possession of the property and advised them that the property would only be released if Shawn Weatherford, himself, contacted DEFENDANT ISON directly.

65. Between August and November 2018, FAYE, CANDICE and FAYE's daughter attempted to retrieve FAYE's DVR system from the LRPD multiple times but all such attempts were unsuccessful.

66. On November 30, 2018, Assistant Chief of Police, Alice Fulk, received a preservation letter pertaining to FAYE's DVR system.

67. FAYE's DVR system contains incriminatory evidence of constitutional violations, police misconduct and the wanton destruction of personal property all committed by NARCOTICS DEFENDANTS and JOHN DOES 1-25 on September 1, 2016.

68. Since September 1, 2016, LRPD officers have engaged in a pattern of harassment and intimidation directed at FAYE, CANDICE and Shawn Weatherford, which includes marked LRPD police vehicles ominously cruising past the residence at 9806 Labette Dr., slowly circling the residence and parking near the residence for prolonged periods of time for no legitimate reason.

**COUNT I**
**DEFENDANT MARK ISON AND DEFENDANT DALTON SCHISLER**
**VIOLATION OF FOURTH AMENDMENT**

69. PLAINTIFFS hereby incorporate and re-allege Paragraphs one (1) through sixty-eight (68) as and for Paragraph sixty-nine (69) of Count I.

70. At all relevant time, police officers, such as DEFENDANT ISON and DEFENDANT SCHISLER, had a duty to be truthful in affidavits seeking to obtain a search warrant to enter the dwelling of a Little Rock citizen and a duty not to omit from affidavits any material information.

71. At all relevant times, police officers, such as DEFENDANT ISON and DEFENDANT SCHISLER, had a duty to properly execute controlled drug purchases during sting operations so that they comply with the U.S. Constitution, particularly the Fourth Amendment, and also with LRPD policy and established police protocol.

72. Despite these constitutional requirements and duties:

a) DEFENDANT ISON intentionally misrepresented the number of years employed as a police officer to obtain a "no-knock" warrant of 9806 Labette Dr.;

b) DEFENDANT KALMER intentionally mispresented her professional experience conducting "no-knock" narcotics raids to obtain a "no-knock" warrant of 9806 Labette Dr.;

c) DEFENDANT ISON intentionally misrepresented the CI's experience to obtain a "no-knock" warrant of 9806 Labette Dr.;

d) DEFENDANT ISON intentionally misrepresented the CI's success rate to obtain a "no-knock" warrant of 9806 Labette Dr.;

e) DEFENDANT ISON and DEFENDANT SCHISLER intentionally misrepresented material aspects of the alleged drug purchase to obtain a "no-knock" warrant of 9806 Labette Dr.;

f) DEFENDANT ISON and DEFENDANT SCHISLER falsely claimed to have observed material aspects of the alleged drug purchase to obtain a "no-knock" warrant of 3220 King Road;

g) DEFENDANT ISON and DEFENDANT SCHISLER conspired with the C.I. and trafficked false information provided by the C.I. in order to obtain a "no-knock" warrant of 9806 Labette Dr.;

h) DEFENDANT ISON and DEFENDANT SCHISLER knew the C.I. did not by drugs from anyone at 9806 Labette but falsely represented that he did in order to obtain a "no-knock" warrant of 9806 Labette Dr.;

i) DEFENDANT ISON and DEFENDANT SCHISLER knew the C.I. they used was unreliable but falsely represented that the C.I. was reliable in order to obtain a "no-knock" warrant of 9806 Labette Dr.;

j) DEFENDANT ISON and DEFENDANT SCHISLER failed to search or properly search the C.I. they used; and

k) DEFENDANT ISON and DEFENDANT SCHISLER failed to search or properly search the vehicle of the C.I. they used.

73. By reason of the conduct of DEFENDANT ISON and DEFENDANT SCHISLER, and each of them, PLAINTIFFS were deprived of rights, privileges and immunities secured to them by the Fourth and Fourteenth Amendments to the U.S. Constitution, and laws enacted thereunder.

74. The acts committed by DEFENDANT ISON and DEFENDANT SCHISLER, and each of them, were unnecessary, objectively unreasonable and excessive and were, therefore, in violation of their Fourth and Fourteenth Amendment Rights. Therefore, DEFENDANT ISON and DEFENDANT SCHISLER, and each of them, are liable to PLAINTIFFS in damages under 42 U.S.C. § 1983, including loss of liberty interest, punitive damages and attorney's fees.

**COUNT II**
**NARCOTICS DEFENDANTS AND JOHN DOES 1-25**
**VIOLATIONS OF THE FOURTH AMENDEMENT–UNLAWFUL ENTRY**

75. PLAINTIFFS hereby incorporate and re-allege Paragraphs one (1) through seventy-four (74) as and for Paragraph seventy-five (75) of Count II.

76. The Fourth Amendment prohibits unreasonable searches and seizures. At all relevant times, police officers, including NARCOTICS DEFENDANTS and JOHN DOES 1-25, have a duty to report violations of the U.S. Constitution that they observe or of which they are otherwise aware.

77. At all relevant times, the LRPD had a Limits of Authority policy which required that "Little Rock Police Department personnel who are engaged in criminal investigations or law enforcement actions shall make sure that all persons are afforded the rights and protection guaranteed by the Constitution of the United States."

78. NARCOTICS DEFENDANTS and JOHN DOES 1-25, and each of them, engaged in unlawful, unconstitutional conduct by:

a) executing a search and seizure on the dwelling at 9806 Labette Dr. without a legitimate basis in law; and

b) executing a "no-knock" raid on the dwelling at 9806 Labette Dr. despite the lack of a "high risk" situation and other criteria.

79. The February 16, 2018 "no-knock" raid conducted upon 9806 Labette Dr. by NARCOTICS DEFENDANTS and JOHN DOES 1-25, and each of them, were unnecessary and unreasonable and caused PLAINTIFFS' injuries and damages.

80. By reason of the conduct of NARCOTICS DEFENDANTS and JOHN DOES 1-25, and each of them, PLAINTIFFS were deprived of rights, privileges and immunities secured to them by the Fourth and Fourteenth Amendments to the United States Constitution, and laws enacted thereunder.

81. The acts committed by NARCOTICS DEFENDANTS and JOHN DOES 1-25, and each of them, PLAINTIFFS were unnecessary, objectively unreasonable and excessive and were, therefore, in violation of their Fourth and Fourteenth Amendment Rights. Therefore, NARCOTICS DEFENDANTS and JOHN DOES 1-25, and each of them, are liable to PLAINTIFFS in damages under 42 U.S.C. § 1983, including loss of liberty interest, punitive damages and attorney fees.

## COUNT III
## CITY OF LITTLE ROCK
## UNCONSTITUTIONAL OFFICIAL POLICY AND/OR UNCONSTITUTIONAL *MONELL* CUSTOM

82. PLAINTIFFS hereby incorporate and re-allege Paragraphs one (1) through eighty-one (81) above as and for Paragraph eighty-two (82) of Count III.

83. At all relevant times, over the course of many years, there existed an unconstitutional official policy and/or unconstitutional *Monell* custom at the LRPD whereby:

a) DEFENDANT BUCKNER required that all LRPD search warrants be executed with the assistance of the SWAT Unit, including JOHN DOES 1-25, showing a deliberate indifference to the inherently dangerous nature of SWAT raids;

b) LRPD police officers, including NARCOTICS DEFENDANT intentionally misrepresented the number of years employed as a police officer;

c) LRPD police officers, including NARCOTICS DEFENDANTS, intentionally mispresented their professional experience conducting "no-knock" narcotics raids to obtain "no-knock" warrants;

d) LRPD police officers, including NARCOTICS DEFENDANTS, intentionally misrepresented C.I.s' experience to obtain "no-knock" warrants;

e) LRPD police officers, including NARCOTICS DEFENDANTS, intentionally misrepresented C.I.s' success rate to obtain "no-knock" warrants;

f) LRPD police officers, including NARCOTICS DEFENDANTS, intentionally misrepresented material aspects of alleged drug purchases to obtain no-knock warrants;

g) LRPD police officers, including NARCOTICS DEFENDANTS, falsely claimed to have observed material aspects of alleged drug purchases to obtain "no-knock" warrants;

h) LRPD police officers, including NARCOTICS DEFENDANTS, conspired with C.I.s and trafficked false information provided by C.I.s in order to obtain "no-knock" warrants;

i) a code of silence concealing police misconduct was tolerated and maintained to perpetuate the LRPD's unconstitutional practice of obtaining and executing "no-knock" warrants without a legal or justifiable basis; and

j) DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and JOHN DOES 1-25 concealed, intentionally mispresented and withheld material information during internal investigations in order to continue perpetrating the mandatory SWAT policy, to continue to obtain "no-knock" warrants and to protect LRPD police officers from criminal or civil liability.

84. The allowance of this pattern was the result of deliberate indifference to fact that LRPD's official policies and/or customs were in violation of the Fourth Amendment and would naturally result in the violation of the constitutional rights of Little Rock citizens, including PLAINTIFFS.

85. The official policy and/or *Monell* "custom" described above was the moving force behind the violations of PLAINTIFFS' constitutional rights and proximately caused PLAINTIFFS' constitutional injuries. The official policy and/or *Monell* "custom" described above also proximately caused a deprivation of the rights, privileges and immunities secured to PLAINTIFFS by the Fourth and Fourteenth Amendments to the U.S. Constitution, and laws enacted thereunder.

86. As a result of the official policies and/or customs described above, PLAINTIFFS' Fourth Amendment rights were violated. Therefore, the CITY is liable to PLAINTIFFS in damages under 42 U.S.C. § 1983, including, loss of liberty interest, punitive damages and attorney fees.

**<u>COUNT IV</u>**
**DEFENDANT BUCKNER, NARCOTICS DEFENDANTS AND JOHN DOES 1-25**
**CIVIL CONSPIRACY PER 42 U.S.C. § 1983**

87. PLAINTIFFS hereby incorporate and re-allege Paragraphs one (1) through eighty-six (86) above as and for Paragraph eighty-seven (87) of Count IV.

88. To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the

alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff.

89. DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and JOHN DOES 1-25 conspired amongst themselves and others to deprive PLAINTIFFS of their constitutional rights. DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and JOHN DOES 1-25 engaged in multiple overt acts in furtherance of the conspiracy alleged herein and these overt acts caused injury to PLAINTIFFS, including but not limited to:

a) conspiring to execute a "no-knock" raid upon 9806 Labette Dr. despite the fact that the NARCOTICS DEFENDANTS and JOHN DOES 1-25 had no legal basis to do so;

b) conspiring to conceal fact that the NARCOTICS DEFENDANTS and JOHN DOES 1-25 had no legal basis to search the dwelling located at 9806 Labette Dr.;

c) conspiring with the C.I. to illegally enter the residence at 9806 Labette Dr., feeding the C.I. information about Shawn Weatherford's identity that he would regurgitate back to NARCOTICS DEFENDANTS as though the information came from the C.I. and not NARCOTICS DEFENDANTS;

d) conspiring to remove and compromise FAYE's DVR system because it contained proof of police misconduct committed by NARCOTICS DEFENDANTS and JOHN DOES 1-25 on February 16, 2018; and

e) removing FAYE's DVR system from her home and refusing to return it despite having no legal basis to retain it.

90. By reason of the conduct of DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and JOHN DOES 1-25, and each of them, PLAINTIFFS were deprived of rights, privileges and immunities secured to them by the Fourth and Fourteenth Amendments to the United States Constitution, and laws enacted thereunder.

91. The acts committed by DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and JOHN DOES 1-25, and each of them, PLAINTIFFS were unnecessary, objectively unreasonable and excessive and were, therefore, in violation of their Fourth and Fourteenth Amendment Rights. Therefore, DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and JOHN DOES 1-25, and each of them, are liable to PLAINTIFFS in damages under 42 U.S.C. § 1983, including loss of liberty interest, punitive damages and attorney fees.

WHEREFORE, PLAINTIFFS pray for judgment against DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and JOHN DOES 1-25, in an amount which will fully and fairly compensate PLAINTIFFS for the damages suffered and asserted herein.

**COUNT V**
**NARCOTICS DEFENDANTS AND JOHN DOES 1-25**
**MALICIOUS PROSECUTION–STATE LAW**

92. PLAINTIFFS hereby incorporate and re-allege Paragraphs one (1) through ninety-one (91) above as and for Paragraph ninety-two (92) of Count V.

93. CANDICE was arrested without probable cause and in violation of Article 2, Section 15 of the Arkansas Constitution and in violation of the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101, *et seq.* The acts, omissions and conduct of NARCOTICS DEFENDANTS and JOHN DOES 1-25 complained of herein were willful, purposeful and malicious.

94. NARCOTICS DEFENDANTS and JOHN DOES 1-25 had CANDICE prosecuted for various crimes when they did not have probable cause to believe that she was guilty of these crimes.

95. NARCOTICS DEFENDANTS and JOHN DOES 1-25 acted with malice in working and conspiring with a C.I. who was well-known to be unreliable, to provide false information and to have prior convictions for filing false police reports.

96. The malice of NARCOTICS DEFENDANTS and JOHN DOES 1-25 is reflected in their fabricating false accounts, providing false information, submitting fraudulent affidavits, omitting exculpatory information and making other false representations, among other malicious acts.

97. The malice of NARCOTICS DEFENDANTS and JOHN DOES 1-25 is reflected in their knowing presentation of materially false and incriminating information to judges and magistrates.

98. The malice of NARCOTICS DEFENDANTS and JOHN DOES 1-25 is reflected in the continuation of criminal case against CANDICE despite knowing at all relevant times that there was no good faith probable cause determination.

99. The malicious conduct of NARCOTICS DEFENDANTS and JOHN DOES 1-25 resulted in damages to CANDICE.

100. All criminal proceedings arising out of the charges brought by NARCOTICS DEFENDANTS and JOHN DOES 1-25 against CANDICE terminated in her favor.

WHEREFORE, PLAINTIFFS pray for judgment against NARCOTICS DEFENDANTS and JOHN DOES 1-25, in an amount which will fully and fairly compensate CANDICE for the damages suffered and asserted herein.

**COUNT VI**
**NARCOTICS DEFENDANTS AND JOHN DOES 1-25**
**FALSE ARREST**

101. PLAINTIFFS hereby incorporate and re-allege Paragraphs one (1) through one hundred (100) as and for Paragraph one hundred one (101) of Count VI.

102. NARCOTICS DEFENDANTS and JOHN DOES 1-25 committed unlawful violations of certain CANDICE's personal liberty which consisted of detention without sufficient legal authority and which was not support by even arguable probable cause because the conduct of NARCOTICS DEFENDANTS and JOHN DOES 1-25 was intentional.

WHEREFORE, PLAINTIFFS pray for judgment against NARCOTICS DEFENDANTS and JOHN DOES 1-25, in an amount which will fully and fairly compensate CANDICE for the damages suffered and asserted herein.

**COUNT VII**
**NARCOTICS DEFENDANTS AND JOHN DOES 1-25**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS–STATE LAW**

103. PLAINTIFFS hereby incorporate and re-allege Paragraphs one (1) through one hundred two (102) as and for Paragraph one hundred three (103) of Count VII.

104. NARCOTICS DEFENDANTS and JOHN DOES 1-25 engaged in intentional and reckless conduct, which was equally extreme and outrageous.

105. That there is a causal connection between the wrongful and fraudulent conduct committed by NARCOTICS DEFENDANTS and JOHN DOES 1-25 and the emotional distress suffered by CANDICE. CANDICE's emotional distress consists of terrifying flashbacks,

extreme anxiety, claustrophobia, nightmares, fear of police officers and/or other manifestations and is severe.

WHEREFORE, PLAINTIFF prays for judgment against NARCOTICS DEFENDANTS and JOHN DOES 1-25, in an amount which will fully and fairly compensate CANDICE for the damages suffered and asserted herein.

**COUNT VIII**
**DEFENDANT KENTON BUCKNER**
**SINGLE ACT SUPERVISORY LIABILITY**

106. PLAINTIFFS hereby incorporate and re-allege Paragraphs one (1) through one hundred five (105) as and for Paragraph one hundred six (106) of Count VIII.

107. At all relevant times, DEFENDANT BUCKNER knew that "no-knock" warrants were reserved for "high-risk situations," and that it is unconstitutional and unlawful to knowingly submit affidavits which contain material misrepresentations of fact or are otherwise untruthful to judges or magistrates in order to obtain "no-knock" warrants. At all relevant times, DEFENDANT BUCKNER knew the inherently dangerous nature of SWAT entries.

108. Nonetheless, DEFENDANT BUCKNER, the CITY's final policy-maker, consciously disregarded this known risk by:

a) promulgating official policy and/or custom in conflict with United States Constitution;

b) Failing to abolish official policy and/or custom in conflict with United States Constitution;

c) Permitting informal custom for SWAT in conflict with United States Constitution and LRPD policies; and

d) Allowing officers with a demonstrable history of materially misrepresenting facts in sworn affidavits to obtain "no-knock" warrants to continue to execute sworn affidavits with materially misrepresented facts to obtain search warrants.

109. That there is a direct link between the official policy and/or custom promulgated or continued by DEFENDANT BUCKNER and the constitutional injuries sustained by PLAINTIFFS.

110. The acts and omissions of the DEFENDANT BUCKNER described above were the moving force behind the violations of PLAINTIFFS' constitutional rights and proximately caused PLAINTIFFS' constitutional injuries. The official policy and/or custom described above also proximately caused a deprivation of the rights, privileges and immunities secured to PLAINTIFFS by the Fourth and Fourteenth Amendments to the United States Constitution, and laws enacted thereunder.

111. As a result of the official policies and/or customs described above, PLAINTIFFS' Fourth Amendment rights were violated. Therefore, the DEFENDANT BUCKNER is liable to PLAINTIFFS in damages under 42 U.S.C. § 1983, including, loss of liberty interest, punitive damages and attorney fees.

WHEREFORE, Plaintiffs, by and through their attorneys, LAUX LAW GROUP and BEN CRUMP, PLLC, and request judgment against the Defendants, and each of them:

1. That Defendants be required to pay PLAINTIFFS' compensatory damages;
2. That Defendants be required to pay actual damages;
3. That DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and JOHN DOES 1-25 be required to pay punitive damages;
4. That Defendants be required to pay attorney fees per 42 U.S.C. § 1988;
5. That this Honorable Court provide appropriate injunctive relief;

6. That this Honorable Court declare that the LRPD's official policies and/or customs described herein are unconstitutional; and

7. That PLAINTIFFS have any other such relief as this Honorable Court deems just and proper.

Respectfully submitted,

Michael J. Laux
Michael J. Laux
E. Dist. Arkansas Bar No. 6278834
One of the Attorneys for PLAINTIFFS
LAUX LAW GROUP
400 W. Capitol Avenue, Suite 1700
Little Rock, AR 72201
Telephone: (501) 242-0750
Facsimile: (501) 372-3482
E-mail: mlaux@lauxlawgroup.com
mikelaux@icloud.com

and

Benjamin L. Crump
E. Dist. Arkansas Bar No. 0072583
One of the Attorneys for PLAINTIFFS
BEN CRUMP, PLLC
122 S. Calhoun Street
Tallahassee, FL 32201
Telephone: (850) 224-2020
Email: ben@bencrump.com